**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Suchart CHANYA, Defendant-Appellant.**

No. 82–1489
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1983.

Godfrey, Decker, McMackin, Shipman, McClane & Bourland, Richard L. Bourland, Fort Worth, Tex., for defendant-appellant.

Ronald C.H. Eddins, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before GEE, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Chanya was convicted of (a) importing more than one pound of heroin into the United States from Thailand, 21 U.S.C. §§ 952(a), 960, and (b) of possession of more than one pound of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), and sentenced to consecutive sentences. A codefendant ("Mr. P."), who had been indicted on these same charges, pleaded guilty and testified against Chanya at his trial.

On Chanya's appeal, he raises three sets of issues: (1) error by the trial court in inquiring as to the numerical division of the jury during the course of its deliberations; (2) insufficiency of the evidence; and (3) improper admission of hearsay statements by Mr. P. and of the passport, visa, and heroin found in Mr. P.'s possession at the time of arrest. We find that precedents of this court require reversal on issue (1), although no reversible merit is presented by the remaining issues. Accordingly, we remand.

1. *The district court's inquiry as to the numerical division of the jury.*

After the trial judge's charge to the jury, it retired at 3:00 p.m. on August 18 to its deliberations, recessing at 5:00 p.m. that day. It returned to its deliberations at 9:00 a.m., August 19, but at 5:10 p.m. that date the jury returned before the court with a note: "We are unable to reach a unanimous verdict. We are at the same place we were this morning."

The following colloquy then took place:

The Court: ... And without telling me how you stand for guilt or innocence, how are you divided? Like six and six, or eight and four? Just give me the figures. Not how you—

Foreperson: It's 10 and 2.

The Court: 10 and 2? All right. I am going to give you some additional instructions I want you to think about, and I am going to keep you a while longer.

I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case, and I have a few additional comments I would like for you to consider as you do so.

The court then gave an "Allen" charge reminding the jury that the case was important, that the trial had been expensive, and that if the jury failed to agree, the case "must be tried again", which "would only serve to increase the costs to both sides, and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you." The charge, among other matters, stated that "if a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it appears to make no

effective impression upon the minds of others." (The charge in full is included as an appendix to this opinion.)

The jury resumed its deliberations at 5:15 p.m. One hour later, at 6:15 p.m., it returned with a verdict that Chanya was guilty on both counts.

In *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 135–36, 71 L.Ed. 345 (1926), the Supreme Court held that an inquiry by the district court to the jury as to the extent of its numerical division was reversible error:

> We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

In *United States v. Hayes,* 446 F.2d 309 (5th Cir.1971), we held under similar circumstances to the present (where on the second day of the jury's deliberations the court inquired as to the numerical division of the jury and then gave an Allen charge), that reversal was required and that the reversal did not turn on the presence or absence of shown coerciveness (although indicating that, as here, it very possibly had resulted). We reiterated the concerns expressed in *Brasfield, supra,* and found them to be controlling as to the issue of reversible error. 446 F.2d at 312. The *Hayes* precedent of this circuit requires reversal

here. *See also United States v. Cheramie,* 520 F.2d 325, 331 n. 8 (5th Cir.1975) (in conjunction with an Allen charge, any questioning with regard to "the numerical division among the jurors ... would have required automatic reversal"); *Cook v. United States,* 254 F.2d 871 (5th Cir.1958).

The government in its brief concedes that "[b]ased on present case law the Court committed reversible error in conducting an inquiry into the numerical standing of the jury prior to verdict." But it urges that "[t]his procedural rule should be changed or modified to allow a case by case inquiry into the prejudice if any created by the inquiry." However, "[t]he firm rule in this circuit is to adhere to a prior panel's decision absent intervening contrary authority from the Supreme Court or our en banc court." *Robinson v. Parson,* 560 F.2d 720, 721 n. 2 (5th Cir.1977). *See also Broussard v. Southern Pacific Transportation Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (en banc) ("The general rule in this Circuit is that one panel cannot overrule another.")

Accordingly, we are required to reverse the conviction and to remand for further proceedings in accordance with law.

### 2. *Other Contentions*

We will nevertheless review the further contentions of error: The alleged improper admission of evidence may recur on retrial. Further, the contention as to the insufficiency of the evidence to support conviction requires determination so as to assure that retrial will not offend former jeopardy principles. *See Burks v. United States,* 437 U.S. 1, 12–17, 98 S.Ct. 2141, 2148–50, 57 L.Ed.2d 1 (1978); *see also Tibbs v. Florida,* 457 U.S. 31, 39–45, 102 S.Ct. 2211, 2217–20, 72 L.Ed.2d 652 (1982).

■ *Sufficiency of the Evidence:* The evidence was clearly sufficient to support a conviction on both counts. The testimony of Mr. P., the defendant Chanya's alleged colleague in the importation effort, is by itself sufficient. Chanya points out certain discrepancies in Mr. P.'s testimony and conduct, and he relies upon his own testimony

that he himself was unaware that there was heroin in his luggage. However, "[i]ssues of credibility, the weight of evidence, and conflicts in evidence are, of course, matters for the jury." *U.S. v. Parr*, 516 F.2d 458, 464 (5th Cir.1975) (citations omitted). Viewing (as required) the evidence presented and the inferences to be drawn from it most favorably to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), it is clear that "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (1982) (en banc). We find little merit in the contention that the evidence was insufficient to support conviction.

■ *Admission of Alleged Hearsay:* Over objection, a customs agent was permitted to testify that Mr. P. had informed him, in response to questioning, that the substance in the suitcases was heroin and that it belonged to Chanya. The district court had permitted the prosecution to secure a reply from the custom agent as to Mr. P.'s statement only if it agreed to put Mr. P. on the stand, which it did. There was no error in the district court's ruling under the circumstances.

Fed.R.Evid. 801(d)(1) provides that a statement is not hearsay if the "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . ." Thus the statement of Mr. P. to which Chanya objected is not hearsay because it is consistent with his later trial testimony and rebuts the implied charge of recent fabrication or improper motive.

The sixth amendment guarantees of confrontation and cross-examination were not violated in this case, as Chanya contends, because Chanya had the opportunity, and availed himself of the opportunity, to cross-examine both Cromer and Mr. P. The Supreme Court has stated: "[T]he confronta-

tion clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

■ *Admission of Evidence about Mr. P.:* The defendant Chanya objected to the admission, as irrelevant to his own guilt, of Mr. P.'s customs declaration, visa, and passport, and of heroin found in Mr. P.'s possession. This evidence was relevant to the government's charge, which considered both Chanya and Mr. P. as principals aiding and abetting one another in their joint enterprise of importing heroin and possessing it with intent to distribute, 18 U.S.C. § 2, and which was supported by Mr. P.'s direct testimony. The customs declaration, visa, and passport showed that Mr. P. and Chanya were going to the same destination in the United States (the Marriott Hotel in Dallas) via the same carrier and route. The defendant Chanya was carrying the baggage claim tag to Mr. P.'s luggage in which the heroin was found. Despite Chanya's claim that, even if relevant, the prejudice to him outweighs the probative value of the evidence, he does not state how he was unfairly prejudiced by admission of this evidence. *See, e.g., United States v. Brooks*, 670 F.2d 625, 629 (5th Cir.1978). We perceive no merit in this contention.

*Conclusion*

Accordingly, although we do not find reversible merit in the other contentions urged by the defendant-appellant Chanya, we are required by the decisional law to REVERSE this conviction and to REMAND to the district court for further proceedings in accordance with law, because the district court erred in inquiring as to the numerical division of the jury during the course of its deliberations and immediately thereafter gave an Allen-type charge.

REVERSED AND REMANDED.

APPENDIX
(THE FOLLOWING PROCEEDINGS WERE HELD IN COURT, AUGUST 19, 1982, COM-

MENCING AT 5:10 P.M., IN THE PRESENCE OF THE JURY)

THE COURT: All right. I have your second note here. "We are unable to reach a unanimous verdict. We are at the same place we were this morning."

And without telling me how you stand for guilt or innocence, how are you divided? Like six and six, or eight and four? Just give me the figures. Not how you—

FOREPERSON: It's 10 and 2.

THE COURT: 10 and 2? All right. I am going to give you some additional instructions I want you to think about, and I am going to keep you a while longer.

I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case, and I have a few additional comments I would like for you to consider as you do so.

This is an important case. The trial has been expensive in time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict the case is left open and must be tried again. Obviously, another trial would only serve to increase the costs to both sides, and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.

Any future jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that the case could ever be submitted to twelve men and women more conscientious, more impartial, or more competent to decide it, or that more or clearer evidence could be produced.

If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it appears to make no effective impression upon the minds of the others.

On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of evidence which fails to convince several of the fellow jurors beyond a reasonable doubt.

Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence. But remember also that, after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt the accused should have the unanimous verdict of not guilty.

You may be as leisurely in your deliberations as the occasion may require and you can take all the time which you may feel is necessary.

I am asking you once again to retire and continue deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the other instructions I have previously given to you.

Now, with these additional instructions, I am going to ask you to go back and kind of think about it for awhile and see if you can't reach a unanimous verdict. If you can't—no one is to surrender, now, his conscientious conviction. Whatever your convictions are, after you've given them due consideration, why, just stick with them if that's the way you feel about it. Nobody is asking you to give up anything. But we do want you to reconsider your position, and if you can be unanimous in your verdict, why, for the reasons stated, it would be of benefit to all.

All right, Marshal. We will ask that you take them back up to the jury room and let them think about it. Don't just run up there and say we can't do anything. You-all sit there and calmly talk about this matter and just see where you stand. Thank you.

(JURY RESUMES DELIBERATIONS AT 5:15 P.M.)