**STATE of Missouri, Respondent,**

**v.**

**Helen MORRIS, Appellant.**

**No. 55845.**

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 22, 1972.

**486**

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Gene P. Graham and Charles E. Vernon, Graham, Paden, Welch & Martin, Independence, for appellant.

BARDGETT, Judge.

Defendant was found guilty by a jury of felonious stealing, a felony (§§ 560.156 and 560.161, RSMo 1969, V.A.M.S.), but the jury could not agree on punishment and so stated in its verdict. The court sentenced defendant to three years imprisonment. Defendant appeals.

Defendant does not question the sufficiency of the evidence. The points raised on this appeal concern events that took place during the voir dire examination of the jury panel, the state's opening statement, and during the jury's deliberations; consequently, an abbreviated statement of facts will suffice.

During the voir dire examination of the jury panel, the prosecutor asked the panel whether they had ever met the defendant or knew her as Helen Morris; whether they knew her by the name of Helen Miles or by the name of Hettie Erskin. Defendant objected on the grounds that the questions were irrelevant, immaterial and for the sole purpose of causing bias and prejudice against defendant. The court sustained the objection; denied defendant's motion for mistrial and then, on request of defendant, instructed the jury to disregard the questions objected to. The prosecutor made no further mention of these or any other names.

Later on during voir dire the prosecutor told the jury that he believed the court would instruct them that the maximum sentence which may be imposed by law was ten years. He then asked if anyone on the panel disagreed with that sentence and believed that such a punishment would be too severe for this type of case. Defendant objected and the court sustained the objection. Defendant moved for a mistrial stating that the prosecutor's statement and question was an attempt to prejudice the minds of the jurors to a sentence in excess of the minimum and to convince the jury that defendant should be given ten years. The motion for mistrial was overruled. No request was made to instruct the jury to disregard the subject statement and question. No further mention was made by the prosecutor regarding punishment on voir dire.

In the course of the state's opening statement, the prosecutor said, "The state will also show that the security officer, store detective, later went to police headquarters and viewed certain photographs and identified the defendant Helen Morris as the lady who was present in the store on June 21." Defendant objected and the court sustained the objection. Defendant moved for a mistrial stating that the remarks of the prosecutor indicated to the jury that defendant had been previously convicted, at least previously arrested; that this bore on her reputation, and that the jury had been prejudiced thereby. The motion for mistrial was overruled. Upon request of defendant, the court instructed the jury to disregard the objectionable statement.

Doris Rodgers, a security officer in the employ of Macy's store, testified that on June 21, 1969, she saw defendant in the lingerie department of the store and saw defendant remove two honey-colored peignoir sets from the store rack and put them in her purse; that defendant then took two black peignoir sets and put one of them in her purse; that she, Rodgers, told Mr. Eden, a store employee to stick around so he could go outside with her; that defendant left the store without paying for the merchandise, and that Rodgers and Mr. Eden ran after defendant telling her that she was the security officer and wanted to talk to defendant. Defendant kept running and Rodgers chased her to a car. Rodgers grabbed hold of defendant at the car but defendant pushed Rodgers away and made off in the car. Rodgers grabbed defendant's purse in the scuffle and kept it. The three peignoir sets referred to above were in the purse. Rodgers was about ten feet from defendant when defendant removed the clothing from the store racks and nothing obstructed her vision. The three peignoir sets were introduced in evidence and other testimony showed their value to be $83.

Glenn Eden, a floor supervisor for Macy's, testified he observed defendant in the lingerie department on the occasion in question and saw her leave the store. He followed her. When defendant reached the outer door, she began running toward the parking lot and he and Mrs. Rodgers followed defendant to a car. Defendant got into the car and although Eden tried to keep the door open defendant managed to get the car started and left rapidly.

The defense offered no testimony.

The jury began deliberations at 9:30 a. m., on the second day of trial. At 11:55 a. m., the court excused the jury for lunch, and thereafter they resumed deliberations. At 2:30 p. m., after they deliberated about three and one-half hours, the jury returned to the courtroom and reported they had not reached a verdict. Following this report, the court told the jury foreman that it did not want to know how the jury stood with reference to guilt or innocence but only how it stood numerically, such as six and six, nine and three. The foreman stated they stood at eleven to one. Another juror spoke up and said, "No" and then said, "We didn't understand the question, your honor." The court explained again. The foreman said, "We have agreed on one thing." The court asked, "What have you agreed on?" The foreman answered, "The jury has agreed unanimously that the defendant is guilty. The jury has not agreed on punishment." The court then stated, "Well now, Mr. Foreman, I will say to you that reach a verdict if you can as to the matter of punishment. If you cannot reach an agreement as to the matter of punishment then you may bring in a verdict finding the defendant guilty and stating that you cannot agree as to the amount of punishment. If that verdict is brought in, then the Court will assess the punishment."

No objection was made by defendant to the foregoing. The jury retired to deliberate further and at 2:40 p. m., the jury returned its verdict. It stated, "We the jury find the defendant guilty of felonious stealing, and can not agree on punishment."

■ Defendant's first point is that the court erred in failing to sustain defendant's motion for mistrial when the prosecutor on voir dire inquired whether any member of the panel knew defendant under the name of Morris, Miles and Erskin.

Obviously the inquiry as to the name Morris was proper as this is defendant's name. As noted supra, the court sustained defendant's objection to the inquiry concerning the names Miles and Erskin and instructed the jury to disregard the question. The state did not pursue the matter any further on voir dire or thereafter. In an attempt to demonstrate prejudice, defendant develops this point by reciting the testimony of state's witness Officer Wiersma wherein the officer testified that the defendant's purse contained papers standing in the name of Loretta Kester, Lorie Kester and Lorie L. Brown, and that the cumulation of these names inferred to the jury that defendant was a known criminal character. The testimony of Officer Wiersma concerning the names of Loretta Kester, Lorie Kester and Lorie L. Brown was first developed by defendant on cross-examination of the officer, and it was defendant who placed the papers from the purse containing these names in evidence. Apparently defendant offered this evidence for the purpose of arguing later that the person who stole the merchandise was someone whose name appeared on these papers, and not the defendant. Defendant is in no position to complain of the effect of evidence defendant introduced.

In support of their positions, both parties cite State v. Daniels, Mo., 347 S.W. 2d 874, 879, in which the court adopted a statement from Petrilli v. United States, 8 Cir., 129 F.2d 101, 104, as follows:

"But where, as here, a reference to the aliases has crept into the proceedings, the situation on appeal will not be controlled by the application of any abstract principle, but by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole."

The record before us demonstrates that the court did not abuse its discretion in refusing to grant a mistrial.

■ Next defendant complains that the trial court erred in refusing to grant a mistrial following the prosecutor's remark in opening statement that, "The State will also show that the security officer, store detective, later went to police headquarters and viewed certain photographs and identified the defendant, Helen Morris, as the lady that was present in the store on June 21." Defendant's objection thereto was sustained; the jury was instructed to disregard the remark, and the motion for mistrial was overruled. Defendant says this remark implied that the defendant was a known police character and, therefore, prejudicial. No evidence of photographic identification by the security officer was introduced; however, the security officer did testify in the case and identified the defendant as being the person she, the security officer, saw steal the merchandise. Defendant argues that the state's case against her was weak, at best. To the contrary, the record demonstrates that the state had a very strong case.

The trial court is vested with discretion as to the determination of prejudice as should require a discharge of the jury. That discretion will not be interfered with unless the record discloses an abuse thereof. State v. Balle, Mo., 442 S.W.2d 35, 40. The record here demonstrates no abuse of discretion. The point is overruled.

■ Defendant next contends the trial court erred in failing to grant a mistrial following the prosecutor's statement on voir dire that the court would instruct them that the maximum sentence which could be imposed would be ten years and then asked the panel whether anyone on the panel disagreed with that sentence and believed that that punishment would be too severe for this type of case. The defendant objected and the objection was sustained. Defendant's motion for mistrial was overruled.

Defendant contends the prosecutor was attempting to improperly influence the jury and commit them in advance as to punishment. Whatever the prosecutor was trying to do was promptly stopped by the trial court and there was no response given by any juror as the objection was promptly made and sustained. Secondly, the jury did not fix the punishment in this case,—the court did. The court did not abuse its discretion in refusing a mistrial. The point is overruled.

■ Defendant's points IV, V, VI, and VII may be considered together. They involve the events that occurred during the jury's deliberations as set forth supra in the factual statement of the case.

These contentions of defendant are that the trial court erred (a) in bringing the jury into the courtroom and inquiring as to how they stood; (b) in permitting the jury to state in open court the problems being experienced in their deliberations; (c) in failing to grant a mistrial following disclosure by the jury of their deliberations, and (d) in advising the jury orally that if they were unable to agree as to punishment that the jury could return a verdict of guilty and leave assessment of punishment to the court.

The jury deliberated for about three and one-half hours before the court made any inquiry of them. The court first asked whether the jury had reached a verdict and the foreman said, "No". The court then inquired as to how they stood numerically and specifically told the foreman not to divulge how they were divided as to guilt or innocence. This inquiry has been approved in Missouri as a method the court can use to ascertain whether there is any reasonable probability of the jury's reaching any verdict. Defendant relies on Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, in support of her contention that this procedure is coercive on the jury. Brasfield states the procedural rule applicable in the federal courts. However, the rule in this state is set forth in State v.

Baker, Mo., 293 S.W.2d 900, and it is not error for the court to inquire of the numerical standing of a jury on the issue of guilt. State v. Smith, Mo., 431 S.W.2d 74, 86. It must be determined from the record of what was said and done at the time as to whether or not there is any indication of coercion. State v. Baker, supra, 293 S.W.2d loc. cit. 906 [4]. The length of time that a jury should be permitted to deliberate is a matter very largely within the discretion of the trial court. State v. Covington, Mo., 432 S.W.2d 267, 271 [5]. In the instant case, neither the fact that the inquiry was made after the jury deliberated for about three and one-half hours, nor the inquiry itself, nor the responses given by the jury, nor the court's remarks concerning punishment, evidence any indication of coercion.

If the jury agrees on the guilt of a defendant but cannot agree on punishment, the court must assess the punishment, S.Ct. Rule 27.03, V.A.M.R., § 546.440, RSMo 1969, V.A.M.S., and that is what the court told the jury here. The court's remarks to the jury urging them to try to agree on punishment if they could, but telling them that, if they could not do so, they could bring in a verdict of guilty stating they could not agree on punishment, in which event the court would assess punishment, are substantially the same as found in State v. Covington, supra, 432 S.W.2d loc. cit. 271 [4]. The better practice is for the court to reduce the information to written form and give the same to the jury in writing, State v. Hampton, Mo., 317 S.W.2d 348, 352–353, and it should have been done in this case. Undoubtedly it would have been done here had there been an objection made by defendant at the time, but there was none. In State v. Roberts, Mo., 272 S.W.2d 190, and in State v. Whitaker, Mo., 275 S.W.2d 316, oral remarks by the court concerning a similar subject matter as here did not cause a reversal of the conviction. S.Ct. Rule 26.02(6) and § 546.070(4) state that all instructions by the court are to be in writing and this rule should be followed. Furthermore, the form

**490**

of the instruction submitting this information to the jury should be as set forth in State v. Brown, Mo., 443 S.W.2d 805, 809. The defendant made no objection whatever to any of the incidents occurring during the jury's deliberations nor was there any request that the court's remarks be put in writing or take a different form. Additionally, the court's remarks did not constitute any misdirection to the jury and the record demonstrates the defendant was not prejudiced by them.

All of the points appearing in defendant's brief relating to the incidents occurring during the jury's deliberations appear for the first time in defendant's motion for new trial. What was said in State v. Whitaker, supra, 275 S.W.2d loc. cit. 321, is applicable here, "No objection was made by the defendants at the time to the remarks of the trial judge, and the jury was permitted to be returned to the jury room for further deliberations without there being made any claim of prejudice. There was no motion to declare a mistrial or that the jury be discharged. At the time the remarks were made, counsel for the defendants apparently did not believe them to be improper or that the remarks were in any way prejudicial. The first objection to the remarks of the trial judge were made in the motion for new trial. * * * But, defendants, in effect, consented to the remarks by making no objection whatever, and took their chance with the jury. They 'cannot thus gamble on a favorable verdict' by permitting the trial to go to conclusion without objection, and then contend for the first time in their motion for a new trial that the court committed reversible error." This is precisely what took place in the case at bar.

Nevertheless, we have examined all questions presented by the defendant and find no reversible error. The judgment is affirmed.

SEILER, J., and SEMPLE, Special Judge, concur.

HOLMAN, P. J., not sitting.